IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **BUSINESS DEVELOPMENT CORPORATION OF SOUTH CAROLINA**<br>111 Executive Center Drive<br>Columbia, South Carolina 29210<br><br>      Plaintiff<br><br>vs.<br><br>**RUTTER & RUSSIN, LLC**<br>One Summit Office Park, Suite 650<br>4700 Rockside Road<br>Cleveland, Ohio 44131<br><br>– and –<br><br>**ROBERT P. RUTTER**<br>One Summit Office Park, Suite 650<br>4700 Rockside Road<br>Cleveland, Ohio 44131<br><br>– and –<br><br>**JUSTIN RUDIN**<br>One Summit Office Park, Suite 650<br>4700 Rockside Road<br>Cleveland, Ohio 44131<br><br>– and –<br><br>**GALLAGHER, GAMS, TALLEN, BARNES & LITTRELL, LLP**<br>471 East Broad Street, 19th Floor<br>Columbus, Ohio 43215-3864<br><br>– and – | CASE NO.:  **1:19  CV  2609**<br>      JUDGE ADAMS<br><br>JUDGE:  **MAG. JUDGE BURKE**<br><br><br>**COMPLAINT**<br><br><br>    **JURY DEMAND ENDORSED HEREON**<br><br>**(Abuse of Process; Breach of Contract; Bad Faith; Conversion; Fraudulent Misrepresentation; Promissory/Estoppel; Tortious Interference with Contract; Unjust Enrichment)** |

**MARK H. GAMS**
471 East Broad Street, 19th Floor
Columbus, Ohio 43215-3864

– and –

**STATE FARM FIRE AND CASUALTY COMPANY**
One State Farm Plaza
Bloomington, Illinois 61710

        Defendants

Now comes the Plaintiff, Business Development Corporation of South Carolina (hereinafter "BDC"), and for its claims for relief states as follows:

## **PARTIES**

1.      BDC is a South Carolina Corporation with its principal place of business in Columbia, South Carolina.

2.      Defendants Robert Rutter ("Rutter") and Justin P. Rudin ("Rudin") are attorneys, licensed to practice law in the State of Ohio, and with their offices located at 4700 Rockside Road, Suite 650, Independence, Ohio 44131.

3.      Defendant Rutter & Russin, LLC ("Rutter & Russin") is, upon information and belief, an Ohio Limited Liability Corporation with its principals and employees engaged in the practice of law and supplying legal services in the State of Ohio, with its principal place of business located at 4700 Rockside Road, Suite 650, Independence, Ohio 44131.

4.      Upon information and belief, at all times relevant, Defendant Rutter was a partner and/or principal in and/or of Defendant Rutter & Russin, and Defendant Rudin was an associate

in/of the firm. Both lawyers were employed by the firm at all times relevant and acted as agents, employees, and/or representatives of the firm.

5.    Upon information and belief, Mark H. Gams ("Gams"), is an attorney, licensed to practice law in the State of Ohio, and practicing law out of his office located at 471 East Broad Street, 19th Floor, Columbus, Ohio 43215-3864.

6.    Upon information and belief, at all times relevant, Defendant Gams was a partner and/or principal in and/or of Defendant Gallagher, Gams, Tallen, Barnes & Littrell, LLP ("Gallagher Gams") and at all times relevant, Defendant Gams acted as an agent, employee, and/or representative of the firm.

7.    Defendant Gallagher Gams is, upon information and belief, an Ohio Limited Liability Partnership with its principals and employees engaged in the practice of law, including, in the State of Ohio, and with its principal place of business located at 471 East Broad Street, 19th Floor, Columbus, Ohio 43215-3864.

8.    Upon information and belief, Defendant State Farm Fire and Casualty Company ("State Farm") is an insurance company with its home office and principal place of business located at One State Farm Plaza, Bloomington, Illinois 61710.

9.    Upon information and belief, State Farm issues several different types of policies of insurance in the State of Ohio, including, but not limited to, accident and health, fire, residential and rental property damage, miscellaneous property, water damage, burglary and theft, glass, boiler and machinery, elevator, animal, collision, personal injury liability, property damage liability, workers' compensation and employers liability, fidelity and surety, credit, motor vehicle and aircraft physical damage, marine and inland marine, marine protection and indemnity.

10.     At all times relevant, Defendants Rutter, Rudin, and the law firm of Rutter & Russin represented Steven Sugg and Elizabeth Sugg as plaintiffs in litigation that was pending in the Cuyahoga County Court of Common Pleas, Case No. CV-15-839046, captioned *Steven Sugg, et al. v. State Farm Fire and Casualty Company, et al.* (hereinafter "the Sugg Litigation"). Defendants Rutter, Rudin, and Rutter & Russin are hereafter sometimes referred to collectively as "the Rutter Defendants."

11.     At all times relevant, Defendants Gams and Gallagher Gams represented the Defendant State Farm in the Sugg Litigation. The Defendants Gams and Gallagher Gams are hereafter sometimes referred to collectively as "the Gams Defendants."

12.     At all times relevant, Defendant State Farm had issued and had in place a rental dwelling policy, Policy No. 95-BL-P387-4 ("the Policy"), covering, among other things, property damage, for certain real property owned by Steven and Elizabeth Sugg located in Shaker Heights, Cuyahoga County, Ohio.

13.     At all times relevant, Defendant State Farm was a defendant in the Sugg Litigation.

14.     At all times relevant, Plaintiff BDC, merely because it held a mortgage on the Sugg property, was also named as a defendant in the Sugg Litigation.

15.     Plaintiffs, Steven and Elizabeth Sugg, in the complaint filed on their behalf against Plaintiff BDC by the Rutter Defendants, did not seek any affirmative relief from BDC, and in fact, did not assert any claims against BDC, but again, only included BDC as a defendant because BDC held a mortgage on the Sugg property.

16.     In the Sugg Litigation, State Farm, in pleadings filed on its behalf by the Gams Defendants, also did not assert any claims against BDC, and did not seek any affirmative relief against BDC.

4

## JURISDICTION

17.     This Court has jurisdiction over this matter pursuant to the Federal Diversity Jurisdiction statute, 28 USC §1332, as the Plaintiff is deemed a citizen of the State of South Carolina, the Defendant State Farm is deemed a citizen of the State of Illinois, and all of the other Defendants are citizens of, or are deemed citizens of, and/or have their principal place of business in the State of Ohio.  No Defendants are residents of South Carolina.   There is complete diversity.

18.     Venue is appropriate in this jurisdiction because the claims asserted by Plaintiff arise from a certain policy of insurance, the Policy, as described in ¶12, covering real estate in Shaker Heights, Ohio, and under which Plaintiff was an insured, and also arise from certain action and conduct taken by the Defendants, as described in detail below, during the course of and defending and settling the Sugg Litigation in the Cuyahoga County Court of Common Pleas in Cleveland, Cuyahoga County, Ohio.

## STATEMENT OF FACTS

19.     Plaintiffs reaver and reallege each and every allegation set forth above all as though fully rewritten and incorporated herein.

20.     In April 2008, BDC, as lender, entered into a loan in the amount of $800,000 with Omega Graphics LLC, a company operated by Steven and Elizabeth Sugg.  Among the loan documents were a promissory note, personal guarantees from the Suggs, and a mortgage note executed in the principal amount of $200,000 encumbering a two-family home at 3544 Winchell Road, Shaker Heights, Ohio (the "Premises").

21. At the time BDC's mortgage interest was recorded, there were two prior mortgages. One held by Bank of America NA with a balance of $17,428.95 as of August 18, 2015, and one held by MidFirst Bank with a balance of $78,281.81 as of October 29, 2015.

22. The Premises was insured by Defendant State Farm under a Rental Owner's Insurance Policy (the "Policy") (Policy Number 95-BL-P387-4) insuring the Premises.

23. The Policy had an effective date of April 13, 2013 through April 14, 2014.

24. The Policy contained limits of $306,200.00 (Property Damage – Dwelling), $30,620.00 (Property Damage – Dwelling Extension), and $15,310.00 (Property Damage – Personal Property), for aggregate coverage of $352,130.00.

25. Bank of America NA, MidFirst Bank, and Plaintiff BDC were all listed on the policy as Mortgagees.

26. In January, 2015, the Suggs sued State Farm alleging that State Farm failed to cover a water-related loss at the Premises sustained in February, 2014. The Suggs asked the court to declare they were insured for that loss. The Suggs also claimed damages for the breach of the insurance contract and sought punitive (e.g. "extra") contractual damages because they claimed the carrier did not act in good faith when handling their claim.

27. At all times relevant, the Rutter Defendants represented the Suggs and appeared as counsel for the Suggs in the Sugg Litigation.

28. In Paragraph Three of their claim for declaratory judgment in their Complaint, prepared and filed by the Rutter Defendants, the Suggs asserted that the three mortgage holders – including Plaintiff here, BDC - all had an interest in the policy benefits under the terms of the policy.  No judgment or relief was sought by the Suggs against any of the mortgage holders.

29.     The Rutter Defendants alleged in the Complaint they filed on behalf of the Suggs that because BDC and the other mortgagees listed on the policy were in fact mortgagees, "that entitles the mortgagee(s) to payment even when State Farm has a legitimate reason to deny the insureds' claim." Again, no claims for relief were made on behalf of the Suggs against BDC or any of the other mortgagees named in the State Farm policy.

30.     Only Bank of America, the holder of the first mortgage on the Premises, appeared through counsel in the Sugg Litigation; and then only in August 2015, seven months after the suit was filed. The second mortgage holder, MidFirst, and Plaintiff BDC never appeared in the case through counsel.

31.     Throughout the lawsuit, the service clause which accompanied all the filings by the attorneys for the parties who appeared in the case reflects that they mailed copies of their filings to BDC.

32.     Tellingly, starting in October 2015, which is when the Suggs and State Farm were in the process of negotiating and settling that case, the service clauses on their attorneys' filings no longer reflected that MidFirst or BDC were being served with copies of those filings.

33.     The first such filing that was not served on BDC was made by the Rutter Defendants and informed the Court that a settlement with State Farm was being finalized and the "parties are in the process of executing the necessary settlement documents," and requested permission for their clients to attend the final pretrial by telephone. The service clause on this filing does not show that a copy of that filing was sent to BDC.

34.     On the morning of the final pretrial, the Rutter Defendants filed what was captioned as a "Motion to Enforce Settlement."

7

35.     This document, contrary to the typical practice in the Cuyahoga County Court of Common Pleas, was filed in paper, manually at the clerk's office; however, again, tellingly, the service clause shows they only served those parties which had appeared through attorneys in the case to that point, Bank of America and State Farm.

36.     The motion asserted the clients of the Rutter Defendants had reached a settlement with State Farm and that there was no dispute over the amount of the settlement, the motion went on to claim:

> The only remaining issue standing in the way of a complete resolution is the proper parties to be named on the settlement drafts and the amounts that are payable to each named party. Plaintiffs have an understanding with Bank of America and Midfirst Bank that payment will be made to each of these mortgagees in the amount necessary to pay off each of their respective liens. The payoff amount for Midfirst's lien is $78,281.81 and plaintiffs expect to receive confirmation of Bank of America's payoff amount very soon—quite possibly within the next few days.

37.     Plainly, as between the clients of the Rutter Defendants and the only party against whom they prayed for relief, State Farm, there was nothing for the Court to enforce.  There was absolutely no reason to, and no need to file a Motion to Enforce Settlement other than to obtain the unlawful Order excluding Plaintiff BDC from the Policy benefits it was rightfully, lawfully, and contractually entitled to receive.

38.     Likewise, there was nothing to enforce as between Bank of America, which had appeared through counsel in the case, or Midfirst, which, like BDC, had not appeared through counsel in the case and the clients of the Rutter Defendants and State Farm. Clearly the mortgage holders with priority over BDC were going to have their liens paid off out of the apparent settlement.

39.     There was nothing for the Court to "enforce" against the clients of the Rutter Defendants, State Farm or the other two mortgage holders.

40.     The Rutter Defendants asserted, on behalf of their clients and for their own personal gain, contrary to the terms of the State Farm policy and law, that:

> BDC lost any rights it may have had to seek payment under the policy when it failed to appear in this lawsuit and assert a claim against State Farm within one year of the loss as required by the policy.

41.     After making that assertion, made without any case law or other legal authority whatsoever to support it, the Rutter Defendants, on behalf of their client and for their own personal gain, asserted and requested:

> In order to confirm that BDC has no right to the settlement proceeds and provide State Farm with adequate assurance that it is within its rights to exclude BDC from any settlement payments, plaintiffs move this Court to enter an order requiring State Farm to issue payments of the settlement proceeds as follows:
>
> (1) a draft payable to Steven Sugg and Elizabeth Sugg and Bank of America in the amount agreed upon by plaintiffs and Bank of America that will release Bank of America's lien on the property;
>
> (2) a draft payable to Steven Sugg and Elizabeth Sugg and Midfirst Bank in the amount of $78,281.81;
>
> (3) a draft payable to Rutter & Russin, LLC as Trustee of Steven Sugg and Elizabeth Sugg for the balance of the settlement proceeds remaining after payment of the drafts that name Bank of America and Midfirst Bank as payees.

42.     The Gams Defendants, on behalf of Defendant State Farm, filed a response to the Motion to Enforce Settlement alleging that State Farm was "constrained by the policy language to include BDC as a mortgagee <u>unless this Court orders otherwise</u>." (emphasis added).

43.     This response confirms that there was no enforceable settlement agreement in the absence of an order to deny BDC its rights under the State Farm policy.

44.     This filing, like the prior one by the Rutter Defendants was not served on Plaintiff BDC.

45.     Upon information and belief, and by all appearances, the Rutter Defendants and their clients, as well as State Farm, and its counsel wanted to keep BDC from being notified of what was occurring.

46.     The Defendants' joint efforts in obtaining an Order barring BDC from participation in the settlement and releasing State Farm from contractual and legal duties to BDC violated Ohio law.

47.     Specifically, the Motion to Enforce Settlement filed by the Rutter Defendants, sought relief against BDC (not previously sought at any time in the Sugg Litigation in any pleadings, motions, or other papers filed in that case) to benefit themselves, their clients, and State Farm, but the Motion was contrary to the due process rights of BDC, contrary to the requirements of Ohio Civil Rules 5(A) and 54(C), and unlawful as it was not served on BDC.

48.     Civ.R. 5(A) provides: "Service is not required on parties in default for failure to appear except that pleadings asserting new or additional claims for relief or for additional damages against them shall be served upon them in the manner provided for service of summons in Civ. R. 4 through Civ. R. 4.6." (Emphasis added.)

49.     Likewise, Ohio Civil Rule 54(C) states that "judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." (Emphasis added.)

50.     In the Sugg Litigation, the demand for judgment in the complaint did not seek relief of any kind against BDC.  There were no pleadings filed by any parties in the Sugg Litigation that sought any form of relief against BDC.

51.     The Policy issued by State Farm, in its "Definitions" defined "You" and "Your" to mean the "Named Insured" shown in the Declarations. Steven Sugg and Elizabeth Sugg were the "Named Insured" in the Policy at issue in the Sugg Litigation.

52.     The Mortgage Clause contained in paragraph 12a of "Section I – Conditions" states:

>       If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same in order of precedence of the mortgages.

53.     When all of the Defendants named in the present case jointly asked in the Sugg Litigation for an Order declaring that BDC had no rights to participate in the settlement – when no relief of any kind whatsoever had ever been sought against BDC in the Sugg Litigation - these requests were contrary to law, and contrary to the terms of the Policy.

**COUNT ONE**
**Claim for Abuse of Process**
**Against All Defendants**

54.     Plaintiff reavers and realleges all of the allegations set forth above, all as though fully rewritten and incorporated herein.

55.     The elements of the tort of Abuse of Process are: (1) a legal proceeding has been set in motion in proper forum and with probable cause; (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) direct damage has resulted from the wrongful use of process. *Yaklevich v. Kemp, Schaeffer & Rowe Company, L.P.A.* (1994), 68 Ohio St.3d 294.

56.     Punitive damages and attorneys' fees are available in an abuse of process case where Plaintiff can prove that Defendants acted with malice. *See Pingue v. Preferred Real Estate Invests. II, LLC,* 5th Dist. Delaware No. 15 CAE 01 0008, 2015-Ohio-4751.

57.     In the Sugg Litigation, the Rutter Defendants took the above described actions, contrary to law, and perverted those legal proceedings to deprive BDC of its right to a portion of the insurance proceeds without due process.

58.     The firm, Rutter & Russin, is liable under a theory of respondeat superior for the actions of Defendants Rutter and Rudin.

59.     The Gams Defendants and State Farm are subject to similar claims, and are also liable to Plaintiff because of the filings made by the Gams Defendants on State Farm's behalf seeking to obtain a court Order allowing State Farm to ignore its legal, contractual, and fiduciary duties to BDC.

60.     Defendant Gallagher, Gams is liable under a theory of respondeat superior for the actions of Defendant Gams.

61.     Plaintiff has suffered damages in the total sum of at least $200,000 as a direct and proximate result of the joint and several tortious conduct of all Defendants, and Plaintiff is also entitled to an award of punitive damages and attorney fees as a direct and proximate result of Defendants' calculated, intentional, and malicious actions and conduct.

## COUNT TWO
### Claim for Breach of Insurance Contract
### against Defendant State Farm only

62.     Plaintiff reavers and realleges all of the allegations set forth above, all as though fully rewritten and incorporated herein.

12

63.     Because BDC was listed as a mortgagee and insured on the State Farm policy covering the Sugg property, BDC had certain rights to coverage under the Policy.

64.     BDC was an intended beneficiary under that contract with enforceable rights under the contract. *Hill v. Sonitrol of Southwestern Ohio,* 36 Ohio St.3d 36, 36, 521 N.E.2d 780 (1988).

65.     Defendant State Farm breached Section 1.12 of the Conditions Section of the Policy which provides, in pertinent part, that: i) any loss payable under Coverage A "shall be paid to the mortgagee and the insured as interests appear"; and ii) if more than one mortgagee is named, "the order of payment shall be the same as the order of precedence of the mortgagees."  State Farm breached this clause by failing to pay BDC its share as a mortgagee under the Policy.

66.     A copy of what Plaintiff believes to be a copy of a certified copy of the Policy is attached hereto as Exhibit "A."  (This document was attached as an Exhibit to the Motion to Enforce Settlement filed by the Rutter Defendants in the Sugg Litigation, and represented by them as being a true copy of the Policy.)

67.     As a direct and proximate result of State Farm's breach of contract, Plaintiff has suffered damages in the total sum of at least $200,000.00.

## COUNT THREE
### Claim for Bad Faith against State Farm only

68.     Plaintiff reavers and realleges all of the allegations set forth above, all as though fully rewritten and incorporated herein.

69.     Defendant State Farm's participation in the Motion to Enforce Settlement motion practice was for the sole purpose of receiving an Order specifically excluding Plaintiff BDC from participating in the insurance policy proceeds that BDC was otherwise entitled to participate in, as

even the Suggs and their lawyers, the Rutter Defendants, acknowledged in the Complaint filed by them in the Sugg Litigation.

70.     State Farm's actions in the Sugg Litigation constitutes bad faith vis-à-vis Plaintiff BDC, its insured.

71.     In Ohio an insurer has a duty to act in good faith towards its insured in carrying out its responsibilities under the insurance policy. *Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983).

72.     An insurer owes a duty to its insured to act in good faith in the processing, payment, satisfaction, and settlement of the insured's claims. *Tokles & Son, Inc. v. Midwestern Indemn. Co.,* 65 Ohio St. 3d 621, 629, 605 N.E.2d 936 (1992).

73.     Punitive damages and attorneys' fees are recoverable under a bad faith claim. *See Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983).

74.     As a direct and proximate result of Defendant State Farm's bad faith, Plaintiff is entitled to compensatory damages in the total sum of $200,000, and is also entitled to punitive damages and to attorney fees.

**COUNT FOUR**
**Claim for Conversion against Defendants**
**Rutter, Rudin, and Rutter & Russin, LLC**

75.     Plaintiff reavers and realleges all of the allegations set forth above, all as though fully rewritten and incorporated herein.

76.     The elements of a claim for conversion in Ohio are: (1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages. *6750 BMS, L.L.C. v. Drentlau,* 2016-Ohio-1385, 62 N.E.3d 928, ¶ 1 (8th Dist.).

14

77.     Punitive damages and attorneys' fees are recoverable in a conversion action when the conversion involves elements of fraud, malice or insult. *See Parrish v. Machlan*, 131 Ohio App.3d 291, 722 N.E.2d 529 (1st Dist.1997).

78.     The Rutter Defendants are all jointly and severally liable to BDC for conversion.

79.     The Rutter Defendants came into unlawful possession of the settlement proceeds, which Plaintiff BDC had a right to possess at the time of the conversion, through the same wrongful acts mentioned above.

80.     The Rutter Defendants' actions were taken, despite BDC's clear right to the proceeds under the Policy, and were intended to deprive BDC of its right to proceeds of the Policy.

81.     The firm, Rutter & Russin, is liable to Plaintiff BDC under a theory of respondeat superior for the tortious acts of Defendants Rutter and Rudin.

82.     As a direct and proximate result of the conversion by the Rutter Defendants, Plaintiff suffered damages in the total sum of at least $200,000.

## COUNT FIVE
### Claim for Fraudulent Misrepresentation
### against Rutter, Rudin, and Rutter & Russin, LLC

83.     Plaintiff reavers and realleges all of the allegations set forth above, all as though fully rewritten and incorporated herein.

84.     The elements of a claim of fraudulent misrepresentation are: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent to mislead another to rely upon it; (5) justifiable reliance upon the representation; and (6) an injury

15

proximately caused by the reliance. *Wells Fargo Bank, N.A. v. Perkins,* 10th Dist. Franklin No. 10AP-1022, 2011-Ohio-3790, ¶ 1.

85.     Punitive damages and attorneys' fees are available if Plaintiff can prove its fraudulent misrepresentation claim.

86.     As set forth above, early on in the Sugg Litigation, lawyers for BDC and lawyers for the Suggs - the Rutter Defendants - communicated about the Sugg Litigation and the fact that BDC was merely a junior mortgage holder, and that no relief was sought against BDC in the Complaint.

87.     The lawyers for BDC who were not authorized to enter an appearance in the litigation in Ohio advised the Rutter Defendants that BDC would not be filing an Answer.

88.     The lawyers for BDC gave to the Rutter Defendants information those Defendants requested to assist them in prosecuting the Sugg Litigaion.  In turn, they requested the Rutter Defendants to let them know if they needed additional information or documents and also asked to be kept advised of the status of the litigation.

89.     The Rutter Defendants accepted the information provided to them by BDC's lawyers and advised BDC's lawyers they would keep the BDC lawyers advised of the progress of the Sugg Litigation.

90.     The Rutter Defendants did not object to the fact that BDC was not going to be filing an Answer.  They also did not indicate that they would attempt to default BDC or that they would seek any other affirmative relief against BDC.

91.     Accordingly, the Rutter Defendants made multiple material representations and/or misrepresentations to BDC that they would keep BDC informed of any pertinent developments in the lawsuit.

92.     These representations and/or misrepresentations were material to BDC's decision making process with respect to the Sugg Litigation.

93.     Upon information and belief, and particularly given that the Complaint filed by the Rutter Defendants on behalf of the Suggs acknowledged that BDC had a right to proceeds from the State Farm policy, the Rutter Defendants made these representations to BDC in order to induce BDC to refrain from participating in the Sugg Litigation.

94.     This representation and/or these representations or misrepresentations were made falsely by the Rutter Defendants, with knowledge of their falsity, or with such utter disregard and recklessness as to whether they were true or false that knowledge may be inferred.

95.     These representations and/or misrepresentations were made by the Rutter Defendants with the intent to mislead BDC and BDC's lawyers, and with the intent that BDC and BDC's lawyers would rely on these representations and/or misrepresentations.

96.     BDC justifiably relied upon these representations and/or misrepresentations in making its decision to not actively participate in the Sugg Litigation.

97.     BDC was damaged as a direct and proximate result of the Rutter Defendants' tortious conduct when the Order divesting BDC of any rights in the State Farm insurance proceeds was issued.

98.     As a direct and proximate result of the fraudulent representations and/or misrepresentations by the Rutter Defendants, BDC suffered damages of at least $200,000.

99.     The firm, Rutter & Russin, is liable for the tortious conduct of Defendants Rutter and Rudin under a theory of respondeat superior.

## COUNT SIX
### Claim for Promissory Estoppel
### against The Defendants Rutter, Rudin, and Rutter & Russin, LLC

100.    Plaintiff reavers and realleges all of the allegations set forth above, all as though fully rewritten and incorporated herein.

101.    The elements of a promissory estoppel claim are: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise is made; and (3) the reliance caused an injury to the party claiming estoppel.

102.    As described above, the Rutter Defendants made a clear and unambiguous promise to BDC to keep BDC advised of the progress of the Sugg Litigation.

103.    BDC reasonably, and foreseeably relied upon the clear and unambiguous promise made to BDC by the Rutter Defendants that they would keep BDC and/or BDC's lawyers advised of the progress of the Sugg Litigation.

104.    BDC's reliance on the promise made to it by the Rutter Defendants caused injury and damage to BDC.

105.    The Rutter Defendants are liable to BDC under a promissory estoppel theory for the same reasons set forth in the fraudulent misrepresentation claim, and otherwise above.

106.    Their firm, Rutter & Russin, is liable to Plaintiff under a theory of respondeat superior based upon the actions and conduct of Defendants Rutter and Rudin.

107.    As a direct and proximate result of the tortious conduct of the Rutter Defendants, Plaintiff suffered compensatory damages of at least $200,000.

## COUNT SEVEN
### Claim for Tortious Interference with Contract
### against The Defendants Rutter, Rudin, and Rutter & Russin, LLC

108.    Plaintiff reavers and realleges all of the allegations set forth above, all as though fully rewritten and incorporated herein.

109.    The elements of tortious interference with contract are: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) the lack of justification; and (5) resulting damages. *Ginn v. Stonecreek Dental Care,* 2015-Ohio-1600, 30 N.E.3d 1034, ¶1 (12th Dist.).

*110.*    To establish the intent element of a tortious interference with contract claim, a plaintiff must either (a) prove that the defendant acted with the purpose or desire to interfere with the performance of the contract; or (b) prove that the defendant knew that interference was certain or substantially certain to occur as a result of its actions. *Id.*

111.    Attorneys' fees and punitive damages are available forms of damages if BDC can prove actual malice. *See Frederick D. Harris, M.D., Inc. v. Univ. Hosps.,* 8th Dist. Cuyahoga NOS. 76724 and 76785, 2002-Ohio-983.

112.    The Rutter Defendants are liable to BDC for tortious interference with BDC's contract with State Farm.

113.    It is undisputed that the Rutter Defendants knew about the State Farm Policy and BDC's rights under the Policy.  The allegations in the Complaint they filed on behalf of the Suggs confirms this.

114.    The Rutter Defendants' actions when negotiating a resolution of their clients' claims against State Farm induced State Farm to breach its obligations under the Policy to BDC

as a mortgagee and as an intended third-party beneficiary by failing to remit to BDC its portion of the insurance policy proceeds as required under Section 1.12 of the Policy.

115.    These actions were intentionally and clearly designed by the Rutter Defendants to exclude BDC from its rights under the Policy for their benefit and the benefit of their client.

116.    The Rutter Defendants' actions and conduct were clearly intentional and satisfy the malice intent necessary to make attorneys' fees and punitive damages recoverable by Plaintiff against the Rutter Defendants.

117.    Their firm, Rutter & Russin, is liable under a theory of respondeat superior based on the tortious conduct of Defendants Rutter and Rudin.

118.    As a direct and proximate result of the tortious interference by the Rutter Defendants, Plaintiff suffered damages of at least $200,000 and is also entitled to an award of punitive damages and attorney fees.

## COUNT EIGHT
### Claim for Unjust Enrichment
### against Defendants Rutter, Rudin, and Rutter & Russin, LLC

119.    Plaintiff reavers and realleges all of the allegations set forth above, all as though fully rewritten and incorporated herein.

120.    The elements of an unjust enrichment claim are: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.

121.    Under Ohio law, unjust enrichment is a claim under quasi-contract law that arises out of the obligation cast by law upon a person in receipt of benefits that he is not justly entitled to retain.

122.     Unjust enrichment entitles a party only to restitution of the reasonable value of the benefit conferred. *Robinette v. PNC Bank, NA,* 5th Dist. Licking No. 15-CA-47, 2016-Ohio-767, ¶ 1.

123.     The Rutter Defendants induced BDC to stay out of the Sugg Litigation based on their representations to keep BDC informed of developments in the suit against State Farm.

124.     The Rutter Defendants benefited from the decision by BDC that it would stay out of the Sugg Litigation.

125.     The Rutter Defendants have continued to retain the benefit they gained when BDC decided to not get involved in the Sugg Litigation.

126.     Their firm, Rutter & Russin, is liable under a theory of respondeat superior based upon the actions and conduct of Defendants Rutter and Rudin.

127.     Plaintiff suffered damages as a direct and proximate result of the Rutter Defendants being unjustly enriched, in the total sum of at least $200,000.

**COUNT NINE**
**Claim for Tortious Interference**
**against Defendants Gams and Gallagher Gams**

128.     Plaintiff reavers and realleges all of the allegations set forth above, all as though fully rewritten and incorporated herein.

129.     The Gams Defendants are also liable to BDC for tortious interference with BDC's contract with State Farm.

130.     It is undisputed that the Gams Defendants, as counsel for State Farm, knew about the State Farm Policy and BDC's rights under the Policy.

131.     The Gams Defendants' actions in negotiating a resolution of the Suggs' claims against State Farm  induced State Farm to breach its obligations under the Policy to BDC as a

mortgagee and as an intended third-party beneficiary by failing to remit to BDC its portion of the insurance policy proceeds as required under Section 1.12 of the Policy.

132.    These actions were intentionally and clearly designed by the Gams Defendants to exclude BDC from its rights under the Policy.

133.    Defendants' actions and conduct were clearly intentional and satisfy the malice intent necessary to make attorneys' fees and punitive damages recoverable by Plaintiff BDC against the Gams Defendants.

134.    The firm, Gallagher Gams, is liable under a theory of respondeat superior based on the tortious conduct of Defendant Gams.

135.    As a direct and proximate result of the tortious interference by the Gam Defendants, Plaintiff suffered damages of at least $200,000 and is also entitled to an award of punitive damages and attorney fees.

Wherefore, Plaintiff Business Development Corporation of South Carolina hereby demands judgment as follows:

1.  Compensatory Damages in the total sum of at least $200,000 as will be proven at trial against all defendants, jointly and severally;

2.  For punitive damages, and attorney fees in amounts as will be proven at trial against Defendants, Rutter, Rudin, and Rutter & Russin, LLC;

3.  For punitive damages, and attorney fees in amounts as will be proven at trial against Defendants, Mark Gams, Gallagher Gams, and State Farm Fire and Casualty Company;

4.  For court costs and for such other and further relief as the court may deem appropriate under the circumstances.

Respectfully submitted by:

**NIEKAMP, WEISENSELL, MUTERSBAUGH &
MASTRANTONIO, LLP**

John C. Weisensell (0029901)
The Nantucket Building
23 S. Main Street, Suite 301
Akron, Ohio 44308
Telephone: (330) 434-1000
Facsimile:  (330) 434-1001
E-Mail:  jack@nwm-law.com
*Counsel for Plaintiff*


## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

John C. Weisensell (0029901)
*Counsel for Plaintiff*

23