## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| BUSINESS DEVELOPMENT CORPORATION OF SOUTH CAROLINA, | ) ) ) ) | Case No. 1:19-cv-2609 |
| | | Judge J. Philip Calabrese |
| Plaintiff, | ) ) | Magistrate Judge |
| | ) | Kathleen B. Burke |
| v. | ) ) | |
| RUTTER & RUSSIN, LLC, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

Business Development Corporation of South Carolina was a mortgagee to a piece of real property in Shaker Heights, Ohio, a suburb of Cleveland. A burst pipe damaged the dwelling on that property, resulting in an insurance claim in State court against State Farm Fire and Casualty Company. That action settled. Now, Business Development Corporation alleges it was improperly excluded from the settlement proceeds in that case. It sued all parties involved in the earlier action, except the insured, for abuse of process and a host of other State-law tort claims.

Defendants in this action, including Rutter & Russin, Gallagher Gams, and several named individual partners at those law firms, moved to dismiss under Rules 12(b)(1) and 12(c). In response, Business Development Corporation seeks to convert part of the Rule 12(c) motion to one for summary judgment, leave to amend its complaint, and to compel discovery.

## BACKGROUND

The facts are drawn from the complaint Plaintiff Business Development Corporation of South Carolina filed (ECF No. 1), documents from the underlying State court proceeding of which the Court can take notice, and documents central or attached to the complaint or the Rule 12 motions. *See Watermark Senior Living Ret. Cmtys. Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425–26 (6th Cir. 2018).

### A.  BDC's Loan and the Property Damage

In April 2008, Business Development Corporation of South Carolina loaned approximately $800,000 to a limited liability company Steven and Elizabeth Sugg owned and operated.  (ECF No. 1, ¶ 20, PageID #5.)  As part of BDC's loan, the Suggs put up as collateral their property in Shaker Heights, executing a mortgage secured by a promissory note in favor of BDC.  (*Id.*)  When BDC recorded its mortgage interest it was third in priority, directly behind MidFirst Bank; both lenders were behind Bank of America.  (*Id.*, ¶ 21, PageID #6.)  The Suggs still owed Bank of America $17,428.95 and also owed MidFirst Bank $78,281.81.  (*Id.*)

The Suggs maintained an insurance policy for the property, through Defendant State Farm Fire and Casualty Company, which was in effect between April 13, 2013 and April 14, 2014.  (*Id.*, ¶¶ 22–23.)  The policy had several damage caps on it, including for damage to the home itself ($306,200.00), extensions to the home ($30,620.00), and for personal property ($15,310.00).  (*Id.* at ¶ 24.)  The total aggregate coverage amounted to $352,130.00.  (*Id.*)  All three lenders—Bank of America, MidFirst Bank, and BDC—were listed in that order on the policy as mortgagees.  (*Id.*, ¶ 25.)  In the event of a covered loss, they were paid in order of their

2

priority.  (ECF No. 1-1, PageID #37 ("If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear.  If more than one mortgagee is named, the order of payment shall be the order of precedence of the mortgages.").)

In July 2014, the Suggs filed a claim with State Farm under that insurance policy for water damage to the home the past winter.  (ECF No. 7-1, PageID #124.) State Farm denied coverage, claiming the Suggs failed adequately to heat the home causing the burst pipe, meaning they were not entitled to coverage.  (*Id.*)

## B.    State Court Proceedings

After State Farm denied coverage, the Suggs sued in State court seeking a declaratory judgment that they were entitled to coverage and asserting claims for breach of contract and lack of good faith by their insurer.  (ECF No. 7-1, ¶¶ 1–20, PageID #117–79.)  The Suggs named State Farm as a defendant, along with four mortgagees:  Bank of America, MidFirst Bank, BDC, and South State Bank.  (*Id.*, PageID #116.)  The Suggs served each defendant.  (ECF No. 7-2, PageID #128–34.) Bank of America appeared.  (*Id.*)  So did State Farm. (*Id.*)  Business Development Corporation did not.  (*See id.*)  It does not appear MidFirst Bank did either.  (*See id.*)

## C.    The Suggs' Settlement Agreement

After several months of litigation, the Suggs and State Farm reached a settlement agreement.  Shortly thereafter, the Suggs moved to enforce the settlement, which contemplated State Farm paying Bank of America and MidFirst Bank, but not BDC.  (ECF No. 73, PageID #135–37.)  The basis for their motion was not a disagreement about the amount State Farm was going to pay in total, but

3

instead the amounts payable to each named party, based on the Suggs'
"understanding with Bank of America and MidFirst Bank that payment will be made
to each of these mortgagees in the amount necessary to pay off each of their respective
liens." (*Id.*, PageID #135–36.)  The Suggs sought a court order that, "[a]lthough BDC
[was] listed as a mortgagee on the policy," it was "not entitled to be a payee" because
it: failed to comply with the policy's one-year deadline to sue, elected not to appear,
and was not entitled to settlement funds because the policy only provides for payment
to mortgagees after a covered loss.  (*Id.*, PageID #136.)  To that motion, the Suggs
attached two documents:  (1) the certified insurance policy record (ECF No. 7-3,
PageID #139–70); and (2) an email from counsel for BDC to the Suggs' counsel (ECF
No. 7-3, PageID #171).  The email stated, on behalf of BDC, that it saw itself as "more
or less a nominal party" in the State action, and as such, it would "not be appearing
in the Ohio Insurance litigation." (*Id.*)

State Farm was the only party to respond to the request for the order, agreeing
that a settlement was in place, but stating it needed to know which mortgagees to
pay and in what amounts.  (ECF No. 7-4, PageID #173–74.)  To that end, it agreed
BDC never "answered or filed an appearance" and "failed to bring suit against State
Farm within the one-year period permitted under the policy." (*Id.*, PageID #173.)
State Farm believed, however, that it was "constrained by the policy language to
include BDC as a mortgagee" unless the State court ordered otherwise.  (*Id.*, PageID
#174.)

4

In November 2015, the State court did order otherwise and granted the Suggs' motion to enforce the settlement agreement.  (ECF No. 7-5, PageID #176.)  In a hand-written portion of that order, the State court found "that Defendant Business Development Corporation has no right to the settlement proceeds and State Farm is within its rights to exclude BDC from any settlement payments." (*Id.*)  The State court denoted the amounts for each check State Farm should issue, and to whom those checks should be payable:  $13,500 to Bank of America; $78,281.81 to MidFirst Bank; and the balance—$273,218.19—to Rutter & Russin jointly with Mr. and Ms. Suggs.  (*Id.*)  On February 1, 2016, the State court entered its final judgment and dismissed the case with prejudice.  (ECF No. 7-2, PageID #132.)

Stepping back, the Suggs' actions make some practical sense from their standpoint.  With BDC choosing not to appear, and with Bank of America and MidFirst Bank having somewhat smaller interests in the property, the roughly $350,000 aggregate damage cap in the policy left about $250,000 for the Suggs to recover, less attorneys' fees and costs.  Unless, that is, BDC also made a claim for its full interest of approximately $200,000.

### D.     BDC's Lawsuit in Federal Court

In December 2016, BDC allegedly found out it had been excluded from the settlement.  (*See* ECF No. 40-1, ¶ 54, PageID #555.)  Nearly three years later, in November 2019, it initiated this lawsuit.  (ECF No. 1.)  BDC alleges the Suggs' State-court counsel, Defendant Rutter & Russin and its partners Defendants Robert Rutter and Justin Rudin (together, "Rutter & Russin"), Defendant State Farm, and its State-court counsel Defendant Gallagher Gams and its partner Defendant Mark Gams

(together, "Gallagher Gams"), failed to serve the settlement-related documents on BDC.  (*Id.*, ¶¶ 32–33, PageID #7.)  BDC argues the motion to enforce the settlement agreement was a sham and that Rutter & Russin "for their own personal gain" excluded BDC from accessing the settlement proceeds.  (*Id.*, ¶¶ 36–45, PageID #8–10.)

Based on this theory, BDC asserts nine claims, including:  abuse of process against all Defendants (Count 1); breach of contract (Count 2) and bad faith (Count 3) against State Farm; conversion (Count 4), fraudulent misrepresentation (Count 5), promissory estoppel (Count 6), tortious interference with contract (Count 7), and unjust enrichment (Count 8) against Rutter & Russin; and tortious interference (Count 9) against Gallagher Gams.  (*Id.*, ¶¶ 54–135, PageID #11–22.)

### E.    Pending Motions

Rutter & Russin, State Farm, and Gallagher Gams each answered BDC's complaint.  (ECF Nos. 7, 8, & 12.)  After doing so, Rutter & Russin and Gallagher Gams' filed separate motions under Rule 12, and BDC filed three motions of its own.

### E.1.   Rutter & Russin's Motion to Dismiss Under Rule 12(b)(1) and Rule 12(c).

Rutter & Russin move to dismiss the counts against it under both Rule 12(b)(1) and Rule 12(c).  (ECF No. 30.)  With respect to Rule 12(b)(1), they maintain the Court does not have the ability to hear this case because the *Rooker-Feldman* doctrine precludes jurisdiction.  (*Id.*, PageID #378–80.)  Beyond that, they maintain that res judicata bars BDC's claims in any event.  (*Id.*, PageID #380–83.)  If those arguments fail, Rutter & Russin seek a judgment on the pleadings regarding the abuse of process

6

and tortious interference claims as untimely under Ohio's four-year statute of limitations. (*Id.*, PageID #383–84.) Rutter & Russin also maintain BDC's claim for tortious interference fails to allege damages (*id.*, PageID #385) and that they are entitled to judgment on the conversion and unjust enrichment claims because BDC is not entitled to the settlement proceeds in the first place (*id.*, PageID #386).

### E.2. Gallagher Gams' Motion to Dismiss Under Rule 12(c)

Gallagher Gams makes similar arguments in their motion, namely that the Court lacks jurisdiction under *Rooker-Feldman*. ([ECF No. 35](), PageID #416–18). Further, they contend that BDC failed to state a claim for either abuse of process because parties in default need not be served under the Ohio Civil Rules (*id.*, PageID #419–21) or tortious interference because they cannot be liable for "interfering with State Farm's relationship [with BDC] while acting as State Farm's attorney-agent" under Ohio law (*id.*, PageID #421–23). Gallagher Gams further argue they owed BDC no duty and that BDC waived its rights by failing to participate in the State action. (*Id.*, PageID #423–25.) Gallagher Gams also joined Rutter & Russin's motion. ([ECF No. 35](), PageID #419 n.2.)

### E.3. Business Development Corporation's Motions

In addition to responding to Rutter & Russin's and Gallagher Gams' motions ([ECF No. 36](); [ECF No. 44)](), BDC filed several of its own.

### E.3.a. Motion to Convert

First, BDC seeks to convert Part D.3 of Rutter & Russin's motion—the portion relating to the statute of limitations to bring claims for abuse of process and tortious interference—from one for judgment on the pleadings to one for summary judgment.

(ECF No. 37, PageID #534–35).  BDC bases its request on the fact that in response to Rutter & Russin's motion, it attached two affidavits attesting to when it discovered the settlement agreement in the State action, which it says supports its argument that filing a motion for relief from judgment in the State action would have been time-barred.  (*Id.*)

### E.3.b. Motion for Leave to Amend

Second, BDC seeks leave to amend its complaint under Rule 15(a)(2).  (ECF No. 40.)  BDC argues it should be afforded leave "to truly get to the merits in this case and avoid a ruling on a technicality" by adding a factual allegation that BDC "first learned of Defendants' tortious conduct on December 21, 2016."  (*Id.*, PageID #542.)  Only Rutter & Russin opposes leave to amend, and BDC did not reply.  (ECF No. 43.)

### E.3.c. Motion to Compel Discovery

Third, BDC moves to compel discovery related to documents in Rutter & Russin's and Gallagher Gams' privilege logs and seeks in-camera review of those documents.  (ECF No. 46, PageID #632.)  Previously, the Court ordered expedited briefing on the discovery issue.  (ECF No. 47.)  Later that week, the Court held a status conference, but did not resolve the motion before the case was reassigned.

### GOVERNING LEGAL STANDARDS

Rutter & Russin move to dismiss under Rule 12(b)(1), arguing the Court lacks subject-matter jurisdiction, a defense that can be raised at any point in a proceeding. *See* Fed. R. Civ. P. 12(b)(1) & (h)(3).  The standard for reviewing a motion under Rule 12(b)(1) "depends on whether the defendant makes a factual or facial challenge to subject-matter jurisdiction." *Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d

8

981, 986–87 (S.D. Ohio 2020) (citing *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 920, 330 (6th Cir. 2007)).

Unlike a factual attack, which requires the district court to analyze conflicting evidence to determine if jurisdiction exists, a facial attack "challenges the jurisdictional sufficiency of the complaint given those facts" alleged in the complaint. *Id.* at 987 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "When reviewing a facial attack, a district court takes the allegations in the complaint as true, similar to the approach employed in reviewing a Rule 12(b)(6) motion to dismiss." *Id.* (citation omitted). Rutter & Russin lodge a facial attack here, challenging the Court's jurisdiction to hear BDC's claims, not the factual jurisdictional predicate for them. Therefore, the Court accepts BDC's version of the facts as true.

Alternatively, Rutter & Russin and Gallagher Gams move for judgment on the pleadings under Rule 12(c). Like a facial challenge under Rule 12(b)(1), "the standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 788 (6th Cir. 2010). "For purposes of judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). "A motion brought pursuant to rule 12(c) is

appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Id.* (quoting *Winget*, 510 F.3d at 582.)

Although a plaintiff need only provide "a short and plain statement of the claim" showing entitlement to relief, *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012), that statement must offer more than mere "labels and conclusions" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'[A] formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rather, there must be "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This means a pleading must contain "either direct or inferential allegations respecting all material elements to sustain recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quotation omitted).

In assessing BDC's claims under this standard, the Court accepts the facts pled as true, construes factual allegations in the light most favorable to BDC, and draws all reasonable inferences in BDC's favor. *Bullington v. Bedford Cnty.*, 905 F.3d 467, 469 (6th Cir. 2018); *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). But the Court does not accept "[c]onclusory allegations or legal conclusion masquerading as factual allegations," as those "will not suffice." *Bullington*, 905 F.3d at 469 (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

## JURISDICTION

Before addressing the motions for judgment on the pleadings on the merits, the Court must address the challenges to its jurisdiction. *See Steel Co. v. Citizens for*

*a Better Env't*, 523 U.S. 83, 93 (1998).  Rutter & Russin and Gallagher Gams predicate their jurisdictional argument on the *Rooker-Feldman* doctrine, which cautions federal courts to refrain from exercising appellate-like jurisdiction over State court judgments.  *See Exxon-Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923).  More accurately, the doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon-Mobil Corp.*, 544 U.S. at 284.  Under this formulation, the doctrine, strictly speaking does not apply, because Business Development Corporation may not qualify as a "state court loser," nor is it seeking to invalidate the State-court judgment.

Whatever the complexities of applying the doctrine, the Sixth Circuit's view is clear:

> Absent a claim seeking review of a final state court judgment, a federal court tempted to dismiss a case under *Rooker-Feldman* should do one thing:  Stop.  If the temptation lingers, the court should try something else:  Reconsider.  And if that does not work, the court should exercise jurisdiction anyway and ask the U.S. Supreme Court to reverse it.

*VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 409 (6th Cir. 2020) (Sutton, J., concurring).  This is "all we lower court judges should need to know" in deciding whether to exercise jurisdiction or dismiss an action based on the *Rooker-Feldman* doctrine.  *Id.*  Accordingly, the Court will exercise jurisdiction over BDC's claims under 28 U.S.C. § 1332.  The parties appear sufficiently diverse, and the amount in controversy exceeds the jurisdictional threshold.

11

## ANALYSIS

Before turning to the motions brought under Rule 12(c), Rutter & Russin and Gallagher Gams raise res judicata as a threshold defense. "Res judicata" is an overarching term encompassing both issue and claim persecution. *See Hutcherson v. Lauderdale Cnty.*, 326 F.3d 747, 758 n.3 (6th Cir. 2003) (citing Charles Alan Wright, *The Law of Federal Courts* § 100A, at 722–23 (5th ed. 1994); Black's Law Dictionary 1312 (7th ed. 1999)). The same is true in Ohio. *See Moore, Successor Trustee of Clarence M. Moore & Laura P. Moore Trust v. Hiram Twp.*, 988 F.3d 353, 357 (6th Cir. 2021).

"Federal courts must give preclusive effect to a state-court judgment only if the rendering state court would do the same." *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 419 (6th Cir. 2012) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466 (1982)); 28 U.S.C. § 1738. "If an individual is precluded from litigating a suit in state court by the traditional principles of res judicata, he is similarly precluded from litigating the suit in federal court." *Moore*, 988 F.3d at 357 (quoting *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011)). When dealing with a State court judgment, federal courts "look to Ohio law to assess whether res judicata should attach to the state-court judgment in the present case." *Id.*

## I. Claim Preclusion

Claim preclusion prevents "parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, ___ U.S. ___, 140 S. Ct. 1589, 1594 (2020). "If a later suit advances the same claim as an earlier suit between the

12

same parties, the earlier suit's judgment 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted in the prior proceeding.'" *Id.* (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)). "The fact that one against whom an adjudication is urged was not a party to, or that his privity does not appear of record in, the previous suit does not prevent the application of the doctrine of res judicata or estoppel." *General Film Co. v. Sampliner*, 252 F. 443, 447 (6th Cir. 1918).

Under Ohio law, the defense of claim preclusion bars "the litigation of claims that were or could have been litigated in the original action." *Martin v. JBS Techs., LLC*, 443 F. Supp. 2d 962, 965 (S.D. Ohio 2006) (citing *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St. 3d 59, 2007-Ohio-1102, 862 N.E.2d 803 (2007)). To prevail on this defense, a party must demonstrate:  (1) a prior final valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privities, as the first; (3) a second action arising from claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action. *Id.* "Because claim preclusion is an affirmative defense," Rutter & Russin and Gallagher Gams have "the burden of pleading and proving each element." *Id.*

### I.A.  Final Judgment on the Merits

An Ohio court would likely afford the judgment and order enforcing the settlement the preclusive effect of a valid judgment on the merits.  In Ohio, "as a general rule, consent judgment operates as res judicata with the same force given to a judgment entered on the merits in a fully adversarial proceeding." *Gilbraith v.*

*Hixson*, 32 Ohio St. 3d 127, 129, 512 N.E.2d 956, 959 (1987) (citing *Horne v. Woolever*, 170 Ohio St. 178, 182, 163 N.E.2d 378, 382 (1959)); *see also Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1108, 1111 (6th Cir. 1981) (noting a strong public interest in finality served by affording consent decrees res judicata).

Ohio recognizes that "a judgment entered by consent, although predicated upon an agreement of the parties, is an adjudication as effective as if the merits had been litigated and remains, therefore, just as enforceable as any other validly entered judgment." *Gilbraith*, 32 Ohio St. 3d at 129, 512 N.E.2d at 959. This is true so long as the final judgment or decree is rendered "without fraud or collusion" and "by a court of competent jurisdiction." *Id.* at 958. Simply, this rule serves the public interest by assuring that litigation has a reasonable end point and by preventing a party from having to contest the same issue or cause more than once. *Gilbraith*, 32 Ohio St. 3d at 131, 512 N.E.2d at 960–61 (citation omitted). Under these principles of Ohio law, there is little question the State action proceeded to a final judgment for purposes of claim preclusion.

BDC alleges both fraud and collusion, which would impair any res judicata defense. On the fraud front, BDC claims fraudulent misrepresentation against Rutter & Russin. ([ECF No. 1](), ¶¶ 83–99, PageID #15–17.) As the factual predicate for that claim, BDC alleges that it advised Rutter & Russin it would not be appearing or answering and that it requested Rutter & Russin keep BDC "advised of the status of the litigation." (*Id.*, ¶ 88, PageID #16.) BDC alleges Rutter & Russin agreed to do so, but never did. (*Id.*, ¶ 89.) BDC now says this amounted to "material

14

representations and/or misrepresentations" by Rutter & Russin because they failed to keep BDC informed about the State action.  (*Id.*, ¶ 91.)  BDC complains that Rutter & Russin's representation that it would keep it informed about the State action constitutes fraud because it "induce[d] BDC to refrain from participating in the Sugg litigation" and misled "BDC and BDC's lawyers," ultimately excluding the company from the settlement.  (*Id.*, ¶¶ 93–98, PageID #17.)  As for collusion, BDC asserts that Rutter & Russin (and the other parties to the lawsuit, including State Farm) worked to ensure BDC was not served with settlement and judgment related filings.  (*Id.*, ¶¶ 31–45, PageID #7–10.)  This "joint effort" was an effort to exclude BDC from "participation in the settlement" and keep it from "being notified of what was occurring."  (*Id.*, ¶¶ 45–46, PageID #10.)

BDC also argues that Ohio Civil Rules 4 through 4.6, 5, and 54(C) required Rutter & Russin and Gallagher Gams to involve it in the settlement.  (ECF No. 36, PageID #444.)  Additionally, it argues that the motion to enforce the settlement was, "semantics aside," a pleading governed by the service rules.  (*Id.*)  Had Rutter & Russin publicly stated in such a filing that BDC had no entitlement to settlement funds, Business Development Corporation maintains it "*most certainly would have answered the complaint and participated in the litigation.*" (*Id.*)  At bottom, the "fraud" and "collusion" BDC complains of is that the parties to the State litigation did not serve it with settlement-related documents, depriving it of the chance to challenge the settlement order or the final judgment until it was too late.

This argument suffers from several flaws.  Initially, as a practical matter, court proceedings in Ohio (and the State court's docket, for that matter) are public record. (*See* ECF No. 7-3, PageID #135.)  It is difficult to commit fraud in the open.  At minimal cost and with slight burden, BDC could have monitored the State litigation instead.  Indeed, BDC was served and chose not to appear.  While the better practice may be to serve a party in default like BDC with motion practice involving a settlement, Ohio law does not require service.  To the contrary, "[s]ervice is not required on parties in default."  Ohio R. Civ. P. 5(A).  BDC's arguments attempting to recharacterize the actions of Rutter & Russin and Gallagher Gams as an attempted amendment fail as a matter of law, both substantively and as a matter of form.  (ECF No. 36, PageID #444.)

### I.B.    Parties or Parties in Privity

Ohio employs a "relaxed concept of privity" when it comes to res judicata. *Stotts v. Pierson*, 976 F. Supp. 2d 948, 962 (S.D. Ohio 2013) (quoting *State ex rel. Davis v. Public Emps. Ret. Bd.*, 174 Ohio App. 3d 135, 2007-Ohio-6594, 881 N.E.2d 294, ¶ 23 (Ohio Ct. App. 2007)).  Although in Ohio "what constitutes privity in the context of res judicata is somewhat amorphous," several recognized theories count, including successors in interest, nonparties who controlled the original suit, principal-agent relationships, and preceding and succeeding owners in property. *Wright v. Heller*, 2018-Ohio-149, 102 N.E.3d 1285, ¶ 24 (Ohio Ct. App. 2018) (cleaned up); *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 193 F.3d 415, 422 (6th Cir. 1999) (en banc).  But "Ohio law does not require even a contractual or beneficiary relationship." *Stotts*, 976 F. Supp. 2d at 962–63 (quoting *Brown v. Dayton*, 89 Ohio

16

St. 3d 245, 248, 2000-Ohio-148, 730 N.E.2d 958 (2000)).  "Rather, as the Ohio Supreme Court has explained, a 'mutuality of interest, including an identity of desired result, might support a finding of privity.'"  *Id.* at 963 (quoting *O'Nesti*, 862 N.E.2d at 804).  But privity also includes nonparties who were "adequately represented" in the initial litigation.  *Becherer*, 193 F.3d at 422–23.

Even though BDC was a party in the Sugg action, it argues that this prong of preclusion doctrine does not apply because "[t]here is no such thing under the civil rules as a mandatory crossclaim." (ECF No. 36, PageID #441.)  This argument misses the mark.  Of course, the rules do not provide for a compulsory crossclaim.  But the real question is whether the parties in *this* action, and specifically BDC, was a party or in privity with a party in the preceding action.  Of course, BDC was named as a party. (ECF No. 7-1, PageID #116–17.)  BDC did not answer, respond to the complaint, or otherwise engage in that action.  (*See generally* ECF No. 7-2; ECF No. 1, ¶ 88, PageID #16.)  Ohio courts extend privity not only to "parties in the prior action" and "those who were in privity with the litigants," but also to "those *who could have joined the action and did not.*"  *Grill v. Artistic Renovations*, 2018-Ohio-747, ¶ 19, 106 N.E.3d 934, 939 (Ohio Ct. App. 2018) (emphasis added) (quotation omitted).  For these reasons, BDC was a party in the previous action.

### I.C.    Actually Litigated or Could Have Been

"The scope of claims covered by this prong is quite broad and prevents not only relitigation of a claim previously adjudicated" but "also precludes litigation of a claim or defense that should have been raised, but was not, in the prior suit."  *Hughes v. Deutsche Bank Nat'l Trust Co.*, No. 5:19-cv-11, 2019 WL 4934507, at *9 (N.D. Ohio

Oct. 7, 2019) (cleaned up).  BDC asserts claims against Rutter & Russin and Gallagher Gams based on various fraud and tort theories that were not raised in the State action.  For its part, BDC maintains that "none of the issues could possibly have been litigated in the prior action" because none of the issues in this action "even existed until the point in time when the trial court in the Sugg Litigation entered its Order" regarding the settlement.  (ECF No. 36, PageID #441.)  This is true as far as it goes.

But this argument fails to account for its ability to seek relief from judgment in the State action under Rule 60(B) of the Ohio Rules of Civil Procedure.  That rule provides that a court may relieve a party of a judgment "upon such terms as are just" based on certain considerations.  Among the grounds for relief are fraud, misrepresentation or other misconduct of an adverse party—the type of claims BDC attempts to assert against Rutter & Russin and Gallagher Gams in this action.  Ohio R. Civ. P. 60(B)(3).

To be sure, relief under the rule does not come easily.  For example, the catch-all provision of Rule 60(B)(5) would not apply.  Where "a party chooses to ignore a complaint and states no other legitimate reason for failing to appear or answer, such a complaint has not stated an adequate ground for relief."  *Ferrell v. Kakika Enters., Ltd.*, No. E-18-037, 2019-Ohio-575, ¶ 20 (Ohio Ct. App. Feb. 15, 2019) (cleaned up).  Nor does a deliberate failure to respond constitute excusable neglect under Rule 60(B)(1).  *Kollin, Stampel, & Alexander v. Lastuka*, No. 56098, 1989 WL 142810, at

*2 (Ohio Ct. App. Nov. 22, 1989) ("[W]e refuse to let Civ. R. 60(B) serve as an emasculation of the pleading rules and time limits.").

And relief based on a claim of fraud or the like must come within one year, and BDC maintains it did not learn about the settlement order until later.  As noted above, however, Business Development Corporation had at least inquiry or constructive notice that its interests may be at stake based on the public filing of the motion to enforce a settlement.  In any event, the record shows that BDC had time to seek relief from the *judgment* under State procedure, but chose not to do so.  In its motion for leave to amend, BDC alleges that it learned of the State-court order enforcing the settlement on December 21, 2016.  (ECF No. 40-1, ¶ 54, PageID #555.) But the State trial court entered final judgment on February 1, 2016, and BDC could have moved within one year to challenge that final judgment.  (ECF No. 7-2, PageID #132.)  Because Business Development Corporation had the opportunity to raise in State court the same issues it asserts here, this prong of preclusion doctrine is satisfied.

### I.D.    Same Transaction or Occurrence

"The Ohio Supreme Court has defined 'transaction' as a 'common nucleus of operative facts.'"  *Hughes*, 2019 WL 4934507, at *9 (quoting *Hapgood v. City of Warren*, 127 F.3d 490, 494 (6th Cir. 1997)); *Spehar v. City of Mentor*, No. 1:12-cv-2855, 2013 WL 3190695, at *5 (N.D. Ohio June 21, 2013) (citing *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 382, 1995-Ohio-331, 653 N.E.2d 226, 229 (1995)).  Put another way, the question is "whether the claims arose out of the same core of operative facts."  *Browning v. Levy*, 283 F.3d 761, 774 (6th Cir. 2002).

In large part, this case involves the same subject matter as the Suggs litigation in State court—whether BDC is entitled to a share of the settlement proceeds as a mortgagee and whether it was wrongfully precluded from receiving a payout.  Even BDC's new theories and claims arise from the prior relationship with Mr. and Ms. Sugg, State Farm, and the other mortgagees.  Therefore, this final element of claim preclusion is satisfied as well.

*     *     *

At bottom, in this lawsuit in federal court, BDC attempts to fix its decision not to answer or appear in the State action.  Through claims of fraud and abuse of process, Business Development Corporation mounts a collateral attack on the State court settlement that extinguished the interest it did not deign to defend when it had the chance.  This lawsuit is not the proper vehicle for such an action.  BDC's claims against Rutter & Russin and Gallagher Gams—all of them—are barred by claim preclusion.

## II.    Remaining Motions

Because claim preclusion bars Business Development Corporation's claims, the Court need not determine whether collateral estoppel (issue preclusion) also bars some or all the issues BDC now attempts to raise.  Further, the Court need not consider whether BDC's claims against Rutter & Russin and Gallagher Gams survive on their merits.  And because res judicata applies, the Court need not and declines to convert the pending motion for judgment on the pleadings to one for summary judgment, rendering moot BDC's motion to convert.  (ECF No. 37.)

That leaves Business Development Corporation's motion for leave to amend. Motions for leave to amend are governed under one of two standards—either Rule 15(a)(2) or Rule 16—depending on the procedural posture of the case. Rule 15(a)(2) and its liberal standard govern leave to amend before the court-imposed deadline for amending the pleadings, while Rule 16 governs leave after that time and requires a showing of good cause. *Compare* Fed. R. Civ. P. 15(a)(2), *with* Fed. R. Civ. P. 16; *see Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 879 (6th Cir. 2020).

On June 4, 2020, BDC sought leave to amend under Rule 15(a)(2)'s more lenient standard. (ECF No. 40, PageID #542.) It seeks to make only one amendment to its initial complaint, that it did not learn of the allegedly tortious conduct until December 16, 2016. (*Id.*) According to the calendar order, the last day to amend the pleadings or add parties was originally April 9, 2020. (ECF No. 26, PageID #348.) Later, the Court extended that deadline until June 9, 2020. (ECF No. 28, PageID #357.) Therefore, Rule 15(a)(2) applies and leave should be freely given when justice so requires.

Even under this liberal standard, a "request [to amend] may be denied if it would be futile, i.e., if the amended complaint would not withstand a motion to dismiss for failure to state a claim." *Doe v. Michigan St. Univ.*, 989 F.3d 418, 427 (6th Cir. 2021). Here, BDC seeks to make only one alteration to its complaint, that it learned about "Defendants' tortious conduct on December 21, 2016," which it failed to include in the initial complaint. (ECF No. 40, PageID #542–43.) It maintains this addition "would eliminate a basis upon which to rule against" BDC on the grounds

21

that "it should have pursued a Rule 60(B) Motion" in the State proceedings.  (*Id.*, PageID #543.)  As shown above, however, accepting BDC's version of the facts, and even accounting for this proposed amendment, fails to avoid application of res judicata.  Therefore, BDC's proposed amendment would be futile.

## CONCLUSION

In the Sugg litigation in State court, Business Development Corporation chose not to participate.  That decision had consequences in State court, resulting in a settlement and judgment about which BDC now complains.  That State-court judgment, in turn, has consequences for this federal litigation.  BDC made its bed in State court, and preclusion doctrine forecloses its efforts to revisit that decision now, particularly where BDC had the opportunity to raise the claims it asserts against Rutter & Russin and Gallagher Gams in the State action.

For all the foregoing reasons, the Court **GRANTS** Rutter & Russin's motion for judgment on the pleadings on res judicata grounds.  (ECF No. 30.)  Because it joined that motion, the Court also **GRANTS** Gallagher Gams' motion.  (ECF No. 35.)  Accordingly, the Court **DISMISSES WITH PREJUDICE** count one of the complaint against Rutter & Russin, Gallagher Gams, and the individual defendants, and counts four through nine in their entirety.  The Court further **DENIES** Business Development Corporation's motion for leave to amend its complaint (ECF No. 40), and **DENIES AS MOOT** the motion to convert (ECF No. 37).

The only remaining issue relates to BDC's motion to compel.  (ECF No. 46.)  Because claim preclusion bars Business Development Corporation's claims against Rutter & Russin and Gallagher Gams and amendment of its complaint would be

futile, BDC's motion to compel discovery from those parties is moot.  Therefore, the Court **DENIES AS MOOT** the motion to compel to the extent it seeks discovery from Rutter & Russin and Gallagher Gams.

     **SO ORDERED.**

Dated:  April 7, 2021

 

 

                                          _____

                                          J. Philip Calabrese
                                          United States District Judge
                                          Northern District of Ohio